## Skinner *vs.* White.

A deputy sheriff is not, by virtue of such office, authorized to act as deputy gaoler.

If a deputy sheriff arrest the deputy gaoler on execution, he cannot take the keys, and confine and hold him in the gaol. If this is done with the assent of the deputy gaoler, it is not a lawful commitment within the gaol ; and if the deputy sheriff, having the deputy gaoler thus within the walls of the prison, take from him a gaol bond, and then suffer him to go at large, it is an escape from the deputy sheriff.

Where a person who has no authority to perform an official act or duty, attempts to perform it, his acts cannot be made valid by the subsequent assent of the officer who had authority to do the act ; nor is his assent to be presumed because it was for his benefit, even if such officer might, by a previous appointment, have constituted a deputy to perform the duty.

In order to constitute a lawful commitment on execution, there must be at least a delivery of the prisoner, at the gaol, to the sheriff, or deputy gaoler, or some one authorized to confine in the gaol.

Where a deputy sheriff arrests the deputy gaoler, on process which requires his commitment, it is his duty to hold him, and notify the sheriff, that he may take the custody of him, or appoint another deputy gaoler.

Where a deputy gaoler is duly committed on execution, he cannot be lawfully released on delivering, to the deputy sheriff who committed him, a bond, in the common form, for the liberty of the prison limits.

An escape from the custody of a deputy sheriff may be declared on as an escape from the sheriff.

Evidence of a negligent escape is sufficient to support an action for a voluntary escape.

Skinner
*vs.*
White.

DEBT, against the sheriff of the county of Coos, for an escape. The declaration contained two counts; in the first of which the plaintiff set out the recovery of a judgment, by him, against one Samuel White, at May term, 1832—the issuing of an execution thereon, and the delivery of the same to one Benjamin Stephenson, a deputy sheriff under the defendant, to be executed—that Stephenson, on the 3d of November, 1832, arrested said Samuel White, and had him in custody in execution, and committed him to the gaol in said county of Coos, and that the defendant, being sheriff of the county, voluntarily permitted him to escape.

The second count, after setting forth the recovery of the judgment, the execution, and its delivery to Stephenson, averred that Stephenson arrested said Samuel White, and held him in custody until the defendant, sheriff as aforesaid, voluntarily permitted him to escape.

A verdict was rendered for the plaintiff, subject to the opinion of this court on the following case. The existence of the judgment, and execution, and the delivery of the latter to Benjamin Stephenson, one of the defendant's deputies, for service, were proved and not contested. It further appeared that Samuel White was the deputy gaoler in the county of Coos, duly appointed and authorized as such, on the third day of November, 1832, and for a long time before, and since; and that on said third of November, Stephenson arrested said Samuel White, on the execution, and took him to the gaol in said county of Coos, and there delivered him at and in said gaol, and took the keys of said gaol, which were then in possession and under the control of Samuel White, and locked him in the gaol; upon which White handed Stephenson a bond, in the usual form, for the liberty of the prison

limits, and Stephenson thereupon unlocked the door, and White went at large.

Stephenson then returned the bond to White, who placed it among the other bonds kept by him for the use of creditors.

The return of Stephenson on the execution was as follows : " Coos, ss.   Nov. 3, 1832.   Then, by virtue of the within execution, I took the body of the within named Samuel White, and committed him to the gaol in Lancaster, in said county of Coos, and at the same time left with the keeper thereof a true and attested copy of this execution, together with a true and attested copy of this my return, endorsed thereon as hereon."

If, upon the above facts, the court should be of opinion that the plaintiff was entitled to recover, judgment to be rendered on the verdict ; otherwise, the verdict to be set aside, and judgment entered for the defendant.

*J. Smith,* for the defendant, contended that Samuel White was so imprisoned, after he had been brought by the deputy sheriff within the limits of the gaol yard, that he might lawfully give a bond without actually having been locked in the gaol.   *Tomlins' Law Dic., Tit. Imprisonment ; Co. Litt.* 253.   The statute of January 3, 1829, section 2, provides, that any person imprisoned on mesne process, in any civil action, or upon execution, " shall be permitted and allowed to have a chamber and lodging in any of the houses or apartments belonging to such prison, and liberty of the yard thereto belonging, but not to pass without the limits of the prison yard, upon reasonable payment, to be made," &c. ; " such prisoner giving bond to the creditor, with two sufficient sureties," &c.   A literal construction of the statute requires only the arrest and confinement of the prisoner within the limits of the prison, in order to entitle him to give a bond.   When the party was in custody of the deputy sheriff, within the limits of the yard, he was restrained of his liberty by the immediate agency of the sheriff, and thus imprisoned.   After giving the bond, he was entitled to all the liberties.

No technical delivery of the bond was necessary. The deputy sheriff was clothed with the authority of the sheriff in making the commitment. Why did not the authority extend to receiving the bond?

The bond having been properly delivered, the right of the creditor could exist only under the bond. After the debtor was enlarged, he might well have the custody of the bond, as agent of the sheriff.

But the return of the officer is evidence that Samuel White was duly committed, and a bond taken. The return, as to all facts proper to be returned, is conclusive evidence. 4 *Mass. R.* 478; 10 *Mass.* 313; 11 *Mass.* 163; *ditto* 16; *Com. Dig., Return G.*

Having been lawfully committed—when the sheriff is attempted to be charged for an escape, he may show that a bond was given, to show that the going at large was lawful.

The declaration is for a voluntary escape; but the evidence shows the escape, if one was committed, to have been a negligent escape.

*Goodall & Woods*, and *Bell*, for the plaintiff. The facts found constitute an escape in the defendant, and this is not excused by the fact of the arrest and giving bond, in the manner set out in the case. 5 *Mass. R.* 310, *Colby* vs. *Sampson;* 11 *ditto* 181, *Gage* vs. *Graffam.*

But the defendant contends that an arrest, by a deputy sheriff, of the execution debtor, and the having him within the limits of the gaol yard, is an imprisonment within the meaning of the statute of January 3d, 1829, entitled "an act for the ease and relief of poor debtors."

The words "imprisoned" and "committed," in the statute of 1829, are used as synonymous terms, and both mean imprisonment within the gaol house, or within the prison walls—an actual confinement within the walls of the prison, by lawful authority. Approved lexicographers define the word "commitment" to mean, "the act of sending to prison—an

order for sending to prison ;" and the words " to commit," " to send to prison—to imprison—to put in any place to be kept safe." And this is according to the common acceptation of the terms "committed" and "imprisoned." These words have, in all prior acts of this state relating to poor debtors, since 1792, been used in the same sense in which they are used in the act of 1829, before referred to ; and by common consent, and common usage, since 1792, the language of those statutes has obtained the construction contended for by the plaintiff.

From the whole tenor and phraseology of the act of 1829, it is apparent that the legislature intended that there should be an actual and legal imprisonment within the walls of the gaol, before the bond contemplated could be delivered, and the prisoner enlarged out of the gaol thereupon.

The language of the second section of the act of 1829, relating to the condition of the bond, is, " that if the above bounden ——, now a prisoner in the gaol in ——, at the suit of ———"; and in the same section of the act the language is, " on condition broken the said creditor may put ' in suit the said bond, and shall be entitled to recover his ' just debt, damages and costs for which such prisoner was ' committed, together with prison charges"—" Provided, al- ' ways, that when any person shall be committed on execu- ' tion founded on any such prison bond, he shall remain in ' close confinement, in the same manner as if this act had ' not been made."

If a person is in prison when carried within the limits of the gaol yard, how long may this continue ? If he is then in prison, what more is ever necessary to be done ?

In the second place, the defendant's counsel contends, that before the enlargement of Samuel White, the debtor, out of prison, a bond to the creditor was executed in conformity with the provisions of the statute relative thereto, and duly delivered.

There is no pretence that the bond was delivered to Skin-

ner, the creditor, or to any one authorized by him to receive it.

Stephenson, if the agent of any one to receive the bond, was the agent of S. White, the debtor, only; and consequently the delivery to him by S. White, was no delivery to any one, but was the mere keeping it in his own control, and in his own power, by his own agent.

S. White was not his own gaol keeper, or deputy gaol keeper, and could not be in law; and consequently, as to this bond, was not, in that capacity, an agent empowered by law to receive the delivery of the bond. He could do no act, as deputy gaol keeper, in reference to himself. When the gaol-keeper, or deputy gaol-keeper, is himself the prisoner, so far as relates to himself he is *functus officio*, and can do no official act.

There was never a moment of time when the creditor, or his agent, or any agent of the law, known to the law as such, had possession of the bond for the use of the creditor; and therefore, in fact and in law, the bond never had legal existence, as such.

If the return of a deputy sheriff is conclusive evidence of the facts and acts required by law to be performed by him, and returned and certified by him upon returnable process, it is not even *prima facie* evidence of doings not within the scope of his authority.

The return of the deputy sheriff, in this case, does not reach the acts complained of, and furnishes no evidence whatever in relation thereto. The facts found by the case, which constitute the default, are not at all contradicted by the return, for it is immaterial whether it were the default of the defendant or his deputy.

If it furnishes evidence at all in relation to the acts of the gaol-keeper, or his deputy, as such, it being a return of collateral facts not in the line of the duty of the deputy sheriff, and not necessary in order to render his proceedings valid so far as his duties were concerned, the return furnishes at most *prima facie* evidence, and which may be tra-

Skinner
*vs.*
White.

versed. 1 *N. H. R.* 70, *Lewis* vs. *Blair*, and the cases there cited to this point.

If it be taken that the return of the deputy sheriff is not conclusive, then the case finds that the debtor, being in the custody of the deputy sheriff, went at large by the permission, with the knowledge, and not against the consent, of the deputy sheriff. So it was a voluntary escape.

If the deputy sheriff's return is to be taken to be conclusive to the extent of his own duties, the escape was with the defendant's knowledge and consent.

If a debtor, who has once been taken in execution, is afterwards suffered to go at large, it is an escape; if with the knowledge and consent, or by the default, of the gaoler or sheriff's officer, it is a voluntary escape; if without his knowledge or default, it is a negligent escape. 2 *Philips' Ev.* 231–2; 2 *Term Rep.* 131, *Bonafous* vs. *Walker*.

To constitute a voluntary escape, it is not essential that the officer actually intend an escape, but one may be through his carelessness. 2 *W. Black.* 1048, *Hawkins* vs. *Plomer*, *cited in* 2 *Dane's Ab., chap.* 65, *art.* 1, *sec.* 2.

If the return be only *prima facie* evidence, then it was a clear default, with knowledge and consent of the deputy sheriff, and so the escape was voluntary.

But evidence of a negligent escape is receivable under, and in proof of, an allegation of a voluntary escape. To this effect the case of *Bonafous* vs. *Walker*, 2 *Term Rep.* 126, is directly in point. 1 *Ventris* 211–217 *cited. See, also, Oliver's American Precedents* 441; 5 *Burr.* 2814, *O'Niel* vs. *Monson*.

It is, therefore, immaterial whether the declaration be for a voluntary or a negligent escape. It is sustained by admissible and competent evidence.

PARKER, C. J. The case finds that S. White, while he was deputy gaoler, was arrested by Stephenson, a deputy sheriff—that Stephenson took possession of the keys, put

White within the walls of the prison, and locked him in—that White thereupon delivered to Stephenson a bond, in due form according to the law then in force, to remain a true prisoner within the limits, and was permitted by Stephenson to go at large.

By the statutes of this state, the sheriff is not only authorized and required to serve process, and do other acts as chief executive officer of the county, but he is made the keeper of the gaol—and for the performance of these acts he may appoint deputies, whose duties are prescribed and regulated by different statutes. But the deputies for different purposes are distinct officers, having different duties to perform. He appoints deputy sheriffs, so called, for the purpose of serving process and aiding in the discharge of his executive duties. *N. H. Laws* 528. And it is his duty to appoint one or more gaol keepers, as the occasion may require, whose duty it shall be, in the absence, death, or other disability of the sheriff, to take all necessary care of the gaols, and the prisoners confined therein. *N. H. Laws* 529. The statutes have prescribed the duties of these deputy gaol keepers; and nothing is found to show that they are general deputies of the sheriff, having power to serve process, or perform any other duties than those indicated by the name of the office—that of keeping the gaol.

And so in relation to the duties of deputy sheriffs—there is nothing in the statutes indicating that they have any general powers as gaol keepers, or that they may, by virtue of their office, assume and perform the duties of gaol keepers. In 11 *Mass.* 183, Sewall, C. J., said, "no deputy of the sheriff, as sheriff, is by such commission keeper of the gaol."

In all the discussions upon this case there has been no attempt to maintain that the duties of the deputies are not generally distinct; the one class being his deputies in the office of keeper of the gaol, and the other his deputies, as sheriff, for the service of process, &c.

Stephenson, then, as a deputy sheriff, had no authority to confine and hold Samuel White, the debtor, in gaol, unless this is an excepted case on account of White's being the deputy gaoler.

A suggestion has been made that Stephenson had, in this case, the right to confine S. White in gaol, by virtue of the command of the writ of execution, which being addressed to the sheriff, or his deputy, contains a command, for the want of goods or estate, to take the body of the debtor, and him commit unto the gaol, and detain in your custody within our said gaol, until he pay the full sums, or be released by due order of law.

The form of the execution is prescribed by statute; and if this were all the law upon the subject the suggestion would certainly be very plausible. Standing alone, the execution would seem to confer upon the deputy equal right with the sheriff to place the debtor within the walls of the prison, and confine him there.

But this position, drawn from the language of the execution, is encountered by other provisions of the statutes, and the argument proves quite too much.

The provision, already referred to, providing for the appointment of deputy gaolers—the provision that the sheriff may keep the gaol by himself or such gaolers—and all the provisions in relation to the duties of the deputy sheriffs show that this command of the writ was not intended to confer upon a deputy sheriff, as such, any power over the gaol, or any right to possess himself of the keys.

Besides, it is admitted that a deputy sheriff has no authority to confine any person except a gaol keeper; and if the command of the execution gave him any power in this respect, it is not perceived why it is not a general power to confine all prisoners whom he may arrest, and to act as keeper over them; which would make as many several gaol keepers as there are deputies of the sheriff.

Again: the execution issuing from a justice of the peace,

is addressed to the sheriff, deputy sheriff and constables of some town or towns; and the command of that is, for the want of goods and chattels to take the body of the debtor, " and him commit unto our gaol," &c.; which, if the mere command to commit could constitute the officer a keeper of the gaol, would make all constables who should execute process, gaol keepers for the prisoners arrested by them respectively. But that this was not intended, is shown by the command, which follows, to the keeper of the gaol, to receive the prisoner, and him safely to keep—and by the provisions of other statutes before referred to, that the sheriff shall keep the gaol by himself, or by his deputy gaoler.

It will hardly be contended that, in relation to constables, there is any excepted case, and that a constable, arresting the gaol keeper, may lawfully take possession of the keys, and act as gaol keeper, for the purpose of confining him within the prison.

If further objection to this suggestion were necessary, it may be found in the questions which might arise, to what extent a deputy sheriff, who had arrested and committed the gaol keeper, was himself gaoler; whether only of the keeper himself, or of the other prisoners also; for although the arrest and confinement of the keeper might not be a constructive escape of those prisoners, so long as they continued in confinement, (2 *Mason's Rep.* 529) the question would still remain, who was the individual who had the legal custody of them while the deputy sheriff held the gaol keeper in confinement with them, and had full control of the keys of the prison? Whoever had such legal custody would be bound to perform the other duties of gaoler.

We are of opinion, then, that the command of the execution must be taken distributively, according to the duties which, by the several statutes, are prescribed to the several officers who act in the arrest, commitment and confinement of the debtor; and that the command of the writ of execution gave Stephenson no authority to confine White within the gaol of which he was keeper.

It has been further suggested, that Stephenson might so confine S. White, because such act was for the benefit of the defendant, who as sheriff might otherwise be liable for an escape ; and that the assent of the defendant is therefore to be presumed.

There is no doubt that the defendant might have appointed Stephenson deputy gaol keeper, and that he would then have had authority to commit and confine the debtor, S. White. But such appointment would have been an official act, conferring official authority. Confining a prisoner is an official act ; and we are not aware of any principle by which the act of a person who is wholly unauthorized to do an official act, but who attempts, notwithstanding, to perform such act, can be held legal, upon the ground that it was for the benefit of an officer having authority to do such act, or to confer a power to do it—or that his assent to it may therefore be presumed, as it may in some instances to acts which have no connexion with official duties, and do not partake of an official character. An express subsequent assent would not make it valid.

Stephenson having no authority to confine in the gaol, the question recurs, whether S. White was legally committed, according to the command of the execution. It has been argued that when Stephenson arrested White, and brought him within the limits, that was legally a commitment, so that a bond might lawfully be given. But the provisions of the statute in relation to the gaols—the command of the execution—the uniform practice—and the form of the bond then required to be given, all show that this position cannot avail the defendant. The condition recites the debtor is a prisoner in the gaol. *N. H. Laws* 476.

In *Colby* vs. *Sampson*, 5 *Mass.* 310, it is held that " if ' a coroner, having an execution against a deputy gaoler, ar- ' rest him, and the sheriff is not at the gaol, nor any keeper ' authorized by him, the coroner leaving his prisoner at the ' gaol house is discharged, and the sheriff is guilty of an es- ' cape."

This seems to be an authority to show that S. White was committed by being brought to the gaol. The sheriff could not be held liable for an escape, unless the prisoner was in his custody, and he was not in his custody unless he had been committed. But if the coroner had no power to confine in the gaol, and did not deliver his prisoner to any one there, authorized to receive him, we do not readily perceive how he could be said to be committed.

In *Day* vs. *Britt,* 6 *Johns. R.* 22, where a *ca. sa.* on a judgment against a sheriff was delivered to the coroner, who arrested the sheriff, and delivered him in the gaol, to the custody of the under sheriff and gaoler, and the sheriff immediately after went at large, it was held that the coroner was liable for an escape. This case went upon the ground that in default of any statute provision, the coroner could not commit to the gaol, but should have imprisoned the sheriff in some other place.

A deputy sheriff is by law required, upon an arrest, to commit to gaol, and makes his return that he has done so. But we have seen that he does not, and has not power to confine in the prison. It is perhaps not necessary, in order to justify him in returning a commitment, that there should be an actual locking up of the prisoner in his presence. But we think there must be, at least, a delivery of the prisoner, at the gaol, to the sheriff, or the deputy gaol keeper, or some one authorized to confine in the gaol, in order to constitute a commitment.

In this case, there was not only no lawful commitment within the walls of the prison, but, on the whole facts in the case, there was no delivery over, there, to any person authorized to confine S. White in the prison. The gaoler himself cannot be his own keeper. " If a woman is warden ' of the fleet, and one imprisoned in the fleet marries her, it ' is an escape in the woman, (as Chomley, chief baron, said) ' and the law adjudged the prisoner to be at large ; for he ' cannot be lawfully imprisoned but under a keeper, and he

'cannot be under the custody of his wife ; for which reason 'the law must necessarily adjudge him to be at large. So (he said) if the warden of the fleet, who hath his office in 'fee, die seized, his son and heir being then imprisoned there, 'and the office descends to him, being in prison, the law 'will adjudge him to be out of prison, although he has fet-'ters upon him, because he cannot be his own prisoner ; so 'that no man may lawfully be detained in prison without 'a gaoler or keeper." *Plowd.* 37.

If the gaoler be committed to his own gaol, on execution, by the sheriff, and no new keeper is appointed, it is an escape of the gaoler, for which the sheriff is accountable ; but it is not an escape of the other prisoners, if they are in fact kept in custody under the gaoler's authority, or his agents. 2 *Mason* 486, 529, *Steere* vs. *Field.*

And in *Day* vs. *Britt*, Mr. Chief Justice Kent says, "It is absurd, then, to suppose that the sheriff can be committed to the gaol of which he has by law the custody, and of which he appoints the keeper."

Taking, then, all the evidence as reported in the case, the action could not be sustained on the first count, which is for an escape from the gaol, for the reason that on the whole case it appears that S. White was never legally committed.

The second count alleges an arrest by Stephenson, as deputy sheriff, and that the sheriff suffered him to escape. Whether the action can be sustained on this count depends upon the question, whether the deputy, having arrested S. White, did all that he was bound to do before he suffered him to go at large. An escape from the custody of the deputy may be treated as an escape from the sheriff.

Stephenson's attempt to confine S. White within the gaol, by taking possession of the keys, was no part of his duty. Having arrested the gaoler, what course was he bound to pursue ? The sheriff was not there. Was it sufficient for him to leave him at the gaol without committing, and

go his way? If so, the second count is not sustained. The creditor in such case might, perhaps, have a remedy by a special action on the case against the sheriff for not being at the gaol to receive the prisoner, or having a deputy gaoler there who might receive and confine the prisoner. But there are obvious objections to such an action; for the sheriff might, with some plausibility, allege that, having appointed a keeper, according to law, he could not reasonably be required to appoint another to keep him, until he had notice that he was arrested.

We are of opinion that the deputy, having thus arrested the gaoler, had not performed his whole duty. He had the right, and should have held him until the sheriff could have been notified, and have appointed a keeper. Suppose the gaol burnt down—or in possession of enemies—or of a mob—what is to be done by a deputy who has arrested a prisoner? Is it sufficient to bring him to the gaol, or the place where it was? Assuredly not. 6 *Johns.* 22, *Day* vs. *Britt.* The sheriff should in such case provide a prison for the time being.

We have thus far considered the case without reference to any legal operation of the sheriff's return as evidence in the case; and the result is that the deputy sheriff suffered an escape, for which the sheriff is liable.

But the return of Stephenson upon the execution, is that he arrested S. White, and committed him to the gaol in Lancaster, &c.; and a question has suggested itself, whether this return is not, in this action, to be taken as conclusive evidence of that fact, so that no evidence can be received to contradict it. *Ante,* 76, *Brown* vs. *Davis.*

If it be so, it will change the grounds upon which the case must be considered, but not the result. The defendant must still be held answerable; for, taking the evidence to be that S. White was duly committed, and the effect of the deputy's return does not and cannot extend beyond that, the evidence still remains, that after he was committed he

was not in the custody of any one authorized to confine him in the gaol—that Stephenson, who held the keys, had no authority to hold them, or to act as gaoler—that he undertook so to act ; and, having received a bond from S. White, opened the doors, gave the keys and the bond to S. White himself, and that White then went at large.    Taking it for granted that S. White was duly committed, and was desirous of giving a bond for the liberty of the prison limits, the gaoler is to judge of the sufficiency of the bond, excepting as to the sureties, and may judge of them.    1 *N. H. R.* 103, *Tappan* vs. *Bellows.*   But here was no gaoler to judge.    The defendant was not there.    His deputy gaoler, confined in the prison, and who was the principal in the bond, was not to judge respecting it ; and Stephenson, who had no authority to hold him there, was of course not authorized to exercise authority respecting the bond.    He had nothing to do with it.    The giving of the bond into his custody, and his releasing the prisoner, were acts which the law cannot recognize, because these proceedings are regulated by law, as a part of the official duties of the gaoler and deputy gaoler ; and those official duties he could not execute.    If, then, it should be assumed, for the purpose of this case, that S. White was duly committed, he was not held in custody, while in gaol, by any one duly authorized to hold him there ; and when the doors were opened, and he went at large, it was not under circumstances that warranted his liberation ; and upon that view of the case the plaintiff must be entiled to recover on the first count, for an escape from the gaol.

It is immaterial to the plaintiff upon which count he recovers, and probably unimportant to any one else ; for if the facts do not warrant the return of the deputy, and the escape has been suffered by him, he may eventually be made answerable.

Both counts in the declaration allege a voluntary escape ; but it seems not to be necessary to enquire whether the

escape is to be regarded as voluntary or negligent, as the authorities cited by the plaintiff's counsel show that evidence of a negligent escape will be sufficient to support the action.

*Judgment for the plaintiff.*